## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY KELLEY,** | : | **CIVIL NO. 3:12-CV-1853** |
| | : | |
| **Plaintiff** | : | **(Judge Caputo)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, et al.** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.  Introduction

This case poses the following question:  Is dismissal of an action warranted when the plaintiff: (1) has failed to perfect service on defendants more than 4 months after filing his complaint; (2) has failed to seek an extension of time in which to serve the complaint; and (3) has failed to state a colorable legal claim in his *pro se* complaint?  Because we believe that this course of conduct calls for dismissal of this action, it is recommended that this action be dismissed.

### II.  Statement of Facts and of the Case

This case is a civil rights action filed by the plaintiff, who is proceeding *pro se*, on September 18, 2012.  (Doc. 1.)  At the time that he filed this action, Kelley also tendered the filing fee prescribed by law.  (Doc. 3.)  In its original form, the plaintiff's

complaint named the Commonwealth of Pennsylvania, a state judge, a state prosecutor, and two private criminal defense attorneys as defendants. Kelley then alleged in vague terms that these defendants conspired to violate his civil rights in the course of a criminal prosecution which took place in 2007 and 2008. (Id.) On the basis of these otherwise unadorned allegations, Kelley sought damages of $10,000,000 from each defendant. (Id.)

Following the filing of this complaint, on September 20, 2012, we entered an order which advised Kelley, in clear and precise terms, of his obligation to effect service of his complaint, stating:

> Plaintiff is directed to make service of the complaint and is advised that service of complaints is governed by Rule 4 of the Federal Rules of Civil Procedure which prescribes who may make service, permitting service to be made by any person who is 18 years of age and is not a party to the litigation. F.R. Civ. P., Rule 4(c)(2). Under Rule 4(m) of the Federal Rules of Civil Procedure a party must make service within 120 days of the filing of the complaint, or seek a timely extension of time in which to serve a complaint. *Failure to serve a complaint in a timely fashion, or timely seek an extension of these service deadlines, may result in dismissal of a complaint without prejudice if more than 120 days have passed since the filing of the complaint without proper service of that complaint upon the Defendant.*

(Doc. 5.)(emphasis added.)

Despite this explicit warning from the court, 120 days have now elapsed without the slightest action by Kelley to effect service of this complaint. On these facts, where there has been a persistent failure by the plaintiff to comply with court

orders; where the plaintiff has failed to perfect service; where the plaintiff's inability or unwillingness to litigate the case which he filed frustrates efforts to resolve this matter; and where the complaint patently lacks merit, we recommend that this complaint be dismissed.

## III.   Discussion

### A.   Rule 4 and Rule 12(b)(5) Also Call For Dismissal of This Complaint

At the outset, dismissal is warranted here, because the failure to properly serve the defendants now compels this outcome under the Federal Rules of Civil Procedure. In particular, this result is mandated by Rule 4 of the Federal Rules of Civil Procedure, which prescribes the method by which service can be made, and describes how a party must demonstrate proof of service on the record. See Fed. R. Civ. P., Rule 4(a)-(l). Rule 4 also sets time limits for service, and prescribes the sanction of dismissal for the failure to make proper and timely service, stating as follows:

> **(m) Time Limit for Service.** If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action . . . against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R.Civ. P. 4(m).

The language of Rule 4(m) is both clear and mandatory. Where there is an unjustified and unexcused failure to timely serve a complaint the court "must dismiss the action." Moreover, in a case such as this, it is also clear that "the party asserting the validity of service bears the burden of proof on that issue. See 4A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1083 (1987)." Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993). When the plaintiff fails to carry this burden of proof on the issue of proper and timely service, consistent with Rule 4(m)'s mandate that the "court– on motion or on its own after notice to the plaintiff– must dismiss the action," dismissal of the case is entirely appropriate. Indeed, when a plaintiff does not show good cause for a failure to serve; Beckerman v. Susquehanna Township Police, 254 F. App'x 149, 154 (3d Cir. 2007), or fails to make service, despite warnings and requests by the court to address service issues; Foster v. Pennsylvania Human Relations Commission, 157 F. App'x 488, 490 (3d Cir. 2005), the courts have frequently sustained Rule 12(b)(5) dismissals of parties.

These principles control here and call for dismissal of this action for failure to make timely and proper service. In this case, the plaintiff has provided no proof of proper service more than 4 months after this action commenced. Indeed, the plaintiff has not endeavored to make proper service, justify the failure to make service, or seek

additional time in which to serve this defendant. Given this complete failure of service, and the total failure to provide any good cause for not fulfilling this basic obligation of all litigants, dismissal is called for here. Beckerman v. Susquehanna Township Police, 254 F. App'x 149, 154 (3d Cir. 2007)(affirming dismissal for failure to serve after 122 days where no good cause shown).

## B.    Dismissal Is Also Warranted Under Rule 41

Rule 41(b) of the Federal Rules of Civil Procedure also authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad, is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than

5

dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, No. 10-1877, 2011 WL 2489897, *3 (3d Cir. June 23, 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)). Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. However, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F.

App'x 509 (3d Cir. 2007); <u>Reshard v. Lankenau Hospital</u>, 256 F. App'x 506 (3d Cir. 2007); <u>Azubuko v. Bell National Organization</u>, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the <u>Poulis</u> factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first <u>Poulis</u> factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the Plaintiff, who has failed to abide by court orders and has neglected to litigate this case.

Similarly, the second <u>Poulis</u> factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." <u>Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." <u>Id</u>. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. <u>Id.</u>; <u>see also Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 222 (3d Cir.2003); <u>Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.</u>, 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222. Oftentimes, this type of prejudice involves disputes between the parties on discovery matters because the

defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance. See, e.g., Poulis, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs did not answer interrogatories, the defendants had to file a motion to compel the plaintiffs' answers, and the defendant had "to file its pre-trial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first"); Ware, 322 F.3d at 220-23 (affirming the District Court's conclusion that a defendant had been prejudiced where the plaintiff repeatedly ignored the defendant's discovery request for the plaintiff's computation of damages and did not provide it until one week prior to trial).

Briscoe v. Klaus, 538 F.3d at 259-60.

In this case, the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action. In such instances, dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. In this regard, while it is evident that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to

interrogatories, or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874; [it is also clear that] conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted). Here, since filing his complaint, the plaintiff has failed to timely file pleadings, and has not complied with orders of the Court. Thus, Kelley's conduct now begins to display "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874

The fourth Poulis factor—whether the conduct of the party or the attorney was willful or in bad faith—also cuts against the plaintiff. In this setting we must assess whether this inaction reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the plaintiff failed in this case to comply with instructions of the Court directing her to take specific actions in this lawsuit, and has violated court orders and the Local Rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. <u>See, e.g.</u>, <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant. The plaintiff cannot refuse to cooperate with this litigation, which would address the merits of these claims, and then assert the untested merits of these claims as grounds for denying a motion to

dismiss.  In any event, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>, 538 F.3d at 263.  Therefore, the untested merits of the non-compliant Plaintiff's claims, standing alone, cannot permit Kelley to avoid the sanction of dismissal under Rule 41 for failure to prosecute.

More fundamentally, as discussed below, Kelley's claims against these defendants fail for a host of fundamental reasons, yet another factor which favors dismissal of this action.  The legal flaws inherent these particular claims are discussed separately below.

### C.    Kelley's Claims Fail on Their Merits

In this case, the claims advanced by Kelley fail on their merits a host of grounds, a factor which further favors dismissal of this action.  The cascading legal flaws in this *pro se* complaint are set forth below:

### 1.    Kelley's Claims Are Time-Barred

First, Kelley's claims are time-barred.  In this regard, when conducting a screening review of a *pro se* complaint under 28 U.S.C. § 1915, a court may consider whether the complaint is barred under the applicable statute of limitations.  As the United States Court of Appeals for the Third Circuit recently explained when it

affirmed the screening dismissal of a *pro se* complaint on statute of limitations

grounds:

> Civil rights claims are subject to the statute of limitations for personal
> injury actions of the pertinent state. Thus, Pennsylvania's two year
> statutory period applies to [these] claims. See Lake v. Arnold, 232 F.3d
> 360, 368 (3d Cir.2000). The limitations period begins when the plaintiff
> knows or had reason to know of the injury forming the basis for the
> federal civil rights action. Gera v. Commonwealth of Pennsylvania, 256
> Fed.Appx. 563, 564-65 (3d Cir.2007). Although we have not addressed
> the issue in a precedential decision, other courts have held that although
> the statute of limitations is an affirmative defense, district court may *sua
> sponte* dismiss a complaint under § 1915(e) where the defense is
> obvious from the complaint and no development of the factual record is
> required. See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir.2006);
> see also Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656-57 (4th
> Cir.2006) (citation omitted)(finding that a district court's screening
> authority under § 1915(e) "differentiates in forma pauperis suits from
> ordinary civil suits and justifies an exception to the general rule that a
> statute of limitations defense should not be raised and considered sua
> sponte.").

Smith v. Delaware County Court 260 F. App'x. 454, 455 (3d Cir. 2008);

see also Jackson v. Fernandez, No. 08-5694, 2009 WL 233559 (D.N.J. Jan. 26, 2009);

Hurst v. City of Dover, No. 04-83, 2008 WL 2421468 (D. Del. June 16, 2008).

Applying these standards, the Court finds that many of the allegations in this *pro se*

complaint are apparently subject to dismissal on statute of limitations grounds.

Specifically, this complaint–which alleges misconduct by government actors in 2007

and 2008– was first filed in September 2012, more than four years after the first of

the events complained of by Kelley. Therefore, any allegations set forth in the compliant would be time-barred by the two year statute of limitations generally applicable to civil rights matters.

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. <u>Wilson v. Garcia</u>, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. <u>Sameric Corp. of Delaware, Inc. v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998); <u>see also</u> <u>Nelson v. County of Allegheny</u>, 60 F.3d 1010 (3d Cir. 1995). While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." <u>Barnes v. American Tobacco Co.</u>, 161 F.3d 127, 154 (3d Cir. 1998) (quoting <u>Kichline v. Consolidated Rail Corp.</u>, 800 F. 2d 356,

360 (3d Cir. 1986)).  <u>See also</u> <u>Lake v. Arnold</u>,  232 F.3d 360, 266-68 (3d Cir. 2000).

Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." <u>West v. Philadelphia Elec. Co.</u>, 45 F.3d 744, 754 (3d Cir.1995).  Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred."  <u>Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.</u>, 927 F.2d 1283, 1295 (3d Cir.1991).  In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts."  <u>West</u>, 45 F.3d at 755 (quotation omitted).  Regarding this inquiry, we have recognized that courts should consider at least three factors:  (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.  <u>See id.</u> at 755 n. 9 (citing <u>Berry v. Board of Supervisors of Louisiana State Univ.</u>, 715 F.2d 971, 981 (5th Cir.1983)).  The consideration of "degree of permanence" is the most important of the factors.  <u>See</u> <u>Berry</u>, 715 F.2d at 981.

<u>Cowell v. Palmer Township</u>. 263 F.3d 286, 292 (3d Cir. 2001)

In this case, Kelley's September 18, 2012, complaint alleges misconduct in the litigation of a criminal case in 2007 and 2008, more than four years ago.  The factual narrative set forth in the complaint plainly reveals that the plaintiff immediately attached a high degree of significance and permanence to these 2007 and 2008 events

14

set forth in this complaint. Thus, Kelley recites well-pleaded facts in his complaint which clearly reveal that, to the extent these events entailed violations of the plaintiff's constitutional rights those violations were known and recognized by him when they occurred. Furthermore, these events plainly had the degree of significance and permanence which should have triggered the plaintiff's awareness of his duty to assert his rights. Therefore, in this case a straightforward application of the two-year statute of limitations appears to compel dismissal of these claims as untimely.

## 2. <u>Kelley May Not Sue the Commonwealth of Pennsylvania</u>

In this case, dismissal of this complaint is also warranted because the complaint fails to meet the substantive standards required by law, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States. For example, we note that this *pro se* complaint runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials. First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to

entertain cases brought by citizens against the state and state agencies.  Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens.  <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 54 (1996).  Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress.  Congress has not expressly abrogated this constitutional immunity with respect to federal lawsuits under this particular state statute, and the Commonwealth clearly has not waived its immunity.  Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa.C.S.A. §8521(b).  While Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, <u>See</u> 42 Pa.C.S.A. §8522, Section 8521(b) flatly states that:  "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.C.S.A. §8521(b).

The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's criminal justice system. Atkin v. Johnson, 432 F. App'x 47, 48 (3d Cir. 2011). Moreover as a matter of statutory interpretation, the plaintiff cannot bring a damages action against this state agency or state officials in their official capacity since it is well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).

In sum, any federal civil rights claims brought by Kelley against the state, state agencies or state officials acting in their official capacity are barred by the Eleventh Amendment to the United States Constitution.

### 3.  Kelley May Not Sue His Defense Counsel for Alleged Civil Rights Violations

Further, in his complaint Kelley seeks to sue his private criminal defense attorneys, alleging that counsel did not effectively represent him in his state criminal case. Kelley may not bring such claims against his own state criminal defense counsel as civil rights violations pursuant to 42 U.S.C. §1983. It is well-established that § 1983 does not by its own force create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private

parties to bring civil actions to vindicate violations of separate, and pre-existing, legal

rights otherwise guaranteed under the Constitution and laws of the United States.

Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-

94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under

§ 1983 must begin with an assessment of the validity of the underlying constitutional

and statutory claims advanced by the plaintiff.

> In this regard, it is also well-settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: *(1) whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right. Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Boykin v. Bloomsburg University of Pennsylvania, 893 F. Supp. 409, 416 (M.D.Pa.

1995), aff'd, 91 F3d 122 (3d Cir. 1996)(emphasis added). Thus, it is essential to any

civil rights claim brought under § 1983 that the plaintiff allege and prove that the

defendant was acting under color of law when that defendant allegedly violated the

plaintiff's rights. To the extent that a complaint seeks to hold private parties liable

for alleged civil rights violations, it fails to state a valid cause of action under 42

U.S.C. § 1983 since the statute typically requires a showing that the defendants are

state actors. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

This principle applies with particular force to civil rights plaintiffs like Kelley, who may invite the courts to consider lawsuits against their own state criminal defense counsel. With respect to this state action requirement, it is well-settled that the conduct of an attorney, representing a client in a state criminal case, does not by itself rise to the level of state action entitling a state prisoner to bring a federal civil rights actions against his own prior counsel. <u>See, e.g.,</u> <u>West v. Atkins</u>, 487 U.S. 42, 50 (1988); <u>Polk County v. Dodson</u>, 454 U.S. 312 (1981); <u>Pete v. Metcalfe</u>, 8 F.3d 214 (5th Cir. 1993). Therefore, in the absence of some further well-pleaded facts, Kelley may not convert his belated dissatisfaction with the performance of his state criminal defense counsel into a federal civil rights lawsuit.

4.      **The Judge and Prosecutor Named in This Lawsuit Are Entitled to Immunity**

Furthermore, in his complaint Kelley seeks to hold a state court judge and prosecutor personally liable to him for $10,000,000 in damages. To the extent that Kelley seeks in his complaint to hold these state judicial employees and prosecutors personally liable for civil rights violations, based upon their actions litigating his state case, it is well-settled that such officials are individually cloaked with immunity from liability.

The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, <u>Mireless v. Waco</u>, 502 U.S. 9, 13 (1991); prosecutors, <u>Imbler v. Pachtman</u>, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, <u>Imbler</u>, 424 U.S. at 423 n.20 (grand jurors); <u>Harper v. Jeffries</u>, 808 F.2d 281, 284 (3d Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.

These longstanding common law immunities for judicial, quasi-judicial, and prosecutorial officials directly apply here and prevent the plaintiff from maintaining this civil action for damages against the individual defendants he has named in his amended complaint. Thus, the judge named in this complaint is clearly entitled to judicial immunity for any actions in these state criminal proceedings, including presiding over a criminal case or sentencing a defendant. <u>See, e.g.</u>, <u>Arsad v. Means</u>, 365 F. App'x 327 (3d Cir. 2010); <u>Figueroa v. Blackburn</u>, 208 F.3d 435 (3d Cir. 2000). As the United States Court of Appeals for the Third Circuit explained when

it rejected a similar effort to impose personal civil rights liability on a judge, this immunity is both broad and absolute:

> A judicial officer in the performance of his or her duties has absolute immunity from suit. Mireles v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citation omitted).

Kwasnik v. Leblon, 228 F. App'x 238, 243 (3d Cir. 2007).

Similarly, the prosecutor and other courthouse employees who participated in this litigation are immune for personal liability for their conduct in the course of this case. See e.g., Imbler v. Pachtman, 424 U.S. 409, 427 (1976); See Gallas, 211 F.3d at 772-73 (court administrator entitled to immunity for release of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (holding that prothonotary, acting under court direction, was immune from suit). In short, since these officials are all immune from liability for their roles in this criminal prosecution, Kelley simply may not maintain an action against these officials and his claims against these defendants must be dismissed.

**5. Kelley May Not Bring a Civil Rights Action for False Arrest Based Upon What Is Presently a Valid Criminal Conviction and Sentence**

Finally, this complaint fails because it rests on a fatally flawed legal premise. At bottom, Kelley seeks to bring a civil rights action premised on claims of false arrest and imprisonment based upon a valid state criminal conviction which has not otherwise been set aside or overturned.

This he cannot do. Quite the contrary, it is well-settled that an essential element of a civil rights false arrest or imprisonment claim is that the underlying criminal case must have been terminated in favor of the civil rights claimant. Therefore, where, as here, the civil rights plaintiff brings a malicious prosecution, or false arrest claim based upon a state case that resulted in a conviction, the plaintiff's claim fails as a matter of law. The United States Court of Appeals for the Third Circuit has aptly observed in this regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483(1994) (quoting Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305(1986) (internal quotation marks omitted)). Given this close relation between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." Heck, 512 U.S. at 483 (quoting Carey v. Piphus, 435 U.S. 247, 257-58,(1978)). The Supreme Court applied this rule in Heck to an inmate's § 1983 suit, which alleged that county

prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct. In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy ... because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Heck, 512 U.S. at 484. Looking to the elements of malicious prosecution, the Court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in Heck had not successfully challenged his criminal conviction. Id.

Hector v. Watt, 235 F.3d 154, 155-156 (3d Cir. 2000)

In this case it is evident from Kelley's complaint that his prior state criminal prosecution did not terminate favorably for him, since he was convicted in this state case and served a sentence as a result of this conviction. Since "one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor" id., the immutable fact of Kelley's conviction presently defeats any federal civil rights claims based upon false arrest or malicious prosecution in this state case, and compels dismissal of these claims. In short, this complaint is based upon the fundamentally flawed legal premise that Kelley can sue state officials for false arrest and imprisonment even though he stands convicted of the crimes charged

against him.  Since this premise is simply incorrect, Kelley's complaint fails as a matter of law.

Thus, an analysis this final <u>Poulis</u> factor– the meritoriousness of the plaintiff's claims–reveals that the assertions in this complaint fail to allege a colorable constitutional claim.  Given the legal bankruptcy of these claims, we find that, in this case, all of the <u>Poulis</u> factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in multiple and profound ways, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>see</u> <u>Fletcher-Hardee Corp. v. Pote  Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay.  <u>Alston v. Parker</u>, 363 F.3d  229, 235 (3d Cir. 2004).  In this case, the current complaint fails to state a viable civil rights cause of action, the factual and legal grounds proffered in support of this complaint make it clear that he has no right to relief, and Kelley has declined to respond to court orders, or otherwise litigate these claims.  On these facts, we conclude that granting further leave to amend would be futile or result in undue delay.  <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed without further leave to amend.

## III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint be dismissed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23d day of January 2013.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge